UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

NAFEESA NAYLOR                    *       CIVIL ACTION NO.  16-0817

VERSUS                         *       JUDGE ROBERT G. JAMES

LEE HARRELL ET AL.              *       MAG. JUDGE KAREN L. HAYES

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, are four

motions to dismiss for failure to state a claim upon which relief can be granted, FED. R. CIV. P.

12(b)(6) [docs. #12, #15, #17, #19], filed by defendants Attorney General Jeff Landry, Judge

Terry Doughty, State Trooper Daniel Grisson, James Berry, Michael Wilson, James Adcock and

Lt. Terry Parrish. For reasons assigned below, it is recommended that the motions be

**GRANTED** and that Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

## Background

On June 10, 2016, Nafeesa Naylor filed the instant civil rights complaint pursuant to 42

U.S.C. § 1983. Naylor asserts that she went to the Richland Parish Sheriff's Office on October 9,

2012, to report a police abuse claim on behalf of her daughter. [doc. #1, ¶ A]. Naylor had

recorded the alleged police abuse on her phone. *Id.* Defendant police officers Lucille Walker,

Terry Parrish, Dewey Allen, and Daniel Grisson asked Naylor if they could keep her phone to

retrieve the recording. *Id.* Naylor agreed to leave the phone with investigators "for the sole

purpose" of allowing them to download the video of the alleged police brutality. *Id.* When

Naylor received her phone back months later, the recording was no longer on her phone. *Id.*

On June 13, 2013, Plaintiff asserts that she was unlawfully arrested, detained, and charged with extortion, public intimidation against an officer, and prostitution based on information Defendants Walker, Parrish, Allen, and Grisson illegally gathered from her cell phone and vehicle, in violation of the Fourth Amendment. *Id.*  ¶¶ B, D, E. Naylor contends that prosecuting her for the aforementioned charges constituted malicious prosecution because she did not commit the crimes. *Id.*  ¶ C. Naylor further asserts that Judge Terry Doughty violated her Eighth Amendment right against excessive bonds when he entered bonds of $50,000 for extortion, $50,000 for public intimidation, $25,000 for prostitution, and a $150,000 probation bond for a previous assault charge. *Id.*  ¶ B. Naylor entered an *Alford* plea to the charge of Public Intimidation on May 19, 2015, and was released from jail on June 10, 2015. *Id.*

Additionally, Naylor contends that the illegal search of her phone showed text-message exchanges between Plaintiff and Defendant James Berry. *Id.* According to Plaintiff, she and Berry had an ongoing sexual relationship for thirteen years—a claim that Berry denied in an interview on June 13, 2013. *Id.* Berry was and is a Magistrate for the Town of Rayville, Louisiana. Naylor claims that Berry lied about his relationship with her, and as a result, she was unlawfully detained, arrested and charged with prostitution, extortion, and public intimidation. *Id.* ¶ F. Lastly, Naylor argues that she was denied equal protection under the Fourteenth Amendment because she was treated differently from Berry, "a Caucasion male, with whom plaintiff, an African American female was engaged in a consensual sexual relation [sic] for over 13 years." *Id.* ¶ G.

Naylor requests $75,000 in actual damages and $3,000,000 in punitive damages.

Defendants Judge Terry Doughty, Trooper Daniel Grisson, and Louisiana Attorney

General Jeff Landry filed the first motion to dismiss on October 19, 2016. [doc. #12]. Defendant James Berry filed the second motion to dismiss on October 24, 2016. [doc. #15]. Defendants Michael Wilson and James Adcock filed the third motion to dismiss on October 26, 2016, [doc. #17], and Defendant Lieutenant Terry Parrish filed the fourth motion to dismiss on October 27, 2016. [doc. #19]. Naylor filed her opposition to all four motions on December 16, 2016. [doc. #23]. Thus, these matters are ripe.

## Discussion

### I.      Plaintiff's Claims Against Judge Doughty Are Barred by Judicial Immunity

Naylor asserts that Judge Doughty violated her Eighth Amendment right against excessive bonds when, on June 13, 2013, he entered bonds of $50,000 for extortion, $50,000 for public intimidation against an officer, $25,000 for prostitution, and a $150,000 probation bond for a previous assault charge.

"Judicial immunity is an immunity from suit and not just from the ultimate assessment of damages." *Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005). "Absolute judicial immunity extends to all judicial acts which are not performed in the clear absence of all jurisdiction." *Kemp* ex rel. *Kemp v. Perkins*, 324 Fed. App'x 409, 411 (5th Cir. 2009) (citing *Adams v. McIlhany*, 764 F.2d 294, 297 (5th Cir. 1985)). Judicial immunity is not overcome by allegations of bad faith or malice and applies even when the judge is accused of acting maliciously and corruptly. *Ballard*, 413 F.3d at 515 (citing *Mireles v. Waco*, 502 U.S. 9, 11 (1991). There are only two exceptions to judicial immunity: (1) nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity; and (2) lawsuits challenging actions taken in the complete absence of all jurisdiction. *Mireles*, 502 U.S. at 11-12.

"In determining whether an action is judicial, a court looks to the nature of the act itself; that is, whether the challenged act is a function normally performed by a judge." *Id.* The Fifth Circuit has adopted a four-factor test for determining whether a judge's actions were judicial in nature: (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity. *Ballard*, 413 F.3d at 515. "These factors are broadly construed in favor of immunity." *Id.*

Setting bond is clearly a judicial function. *Walczyk v. Rio*, 496 F.3d 139, 165 (2d Cir. 2007); *Green v. Mayfield*, No. 3:08-cv-2287-L, 2009 WL 230161, *2 (N.D. Tex. Jan. 29, 2009). As for the second and third factors, Naylor makes no allegations of conduct occurring outside the courtroom or chambers, and the bond setting arose out of a matter pending before Judge Doughty. Finally, the act arose directly out of a visit to Judge Doughty in his official capacity, as he was setting bond in a case pending before him. In her complaint and opposition to the motions to dismiss, Plaintiff fails to state any reasons why Judge Doughty is not entitled to judicial immunity. She simply alleges that he entered bonds in violation of her right against excessive bond. [doc. #1, ¶ B].

Accordingly, it is recommended that all claims against Judge Doughty be DISMISSED WITH PREJUDICE because he is entitled to absolute judicial immunity from Plaintiff's claim.

**II.     Motions to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted**

a)      Standard of Review Under Rule 12(b)(6)

The Federal Rules of Civil Procedure sanction dismissal where the plaintiff fails "to state

a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading states a claim for

relief when, *inter alia*, it contains a "short and plain statement . . . showing that the pleader is

entitled to relief . . . ." FED. R. CIV. P. 8(a)(2). To withstand a motion to dismiss, "a complaint

must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible

on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550

U.S. 544 (2007)). A claim is facially plausible when it contains sufficient factual content for the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Id*.

Although the court must accept as true all factual allegations set forth in the complaint,

the same presumption does not extend to legal conclusions. *Iqbal*, 556 U.S. at 678.  A pleading

comprised of "labels and conclusions" or "a formulaic recitation of the elements of a cause of

action" does not satisfy Rule 8. *Id*. "[P]laintiffs must allege facts that support the elements of the

cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride

Corp.*, 632 F.3d 148, 153-54 (5th Cir. 2010). A court is compelled to dismiss an otherwise well-

pleaded claim if it is premised upon an invalid legal theory. *Neitzke v. Williams*, 490 U.S. 319,

327 (1989).

b)      Section 1983 Framework

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right

secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under color of state law." *Cornish v. Correctional

Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). Section 1983, however, does not create any

substantive rights; it simply provides a remedy for the rights designated therein. *Harrington v.*

*Harris*, 118 F.3d 359, 365 (5th Cir. 1997) (citing 42 U.S.C. § 1983). "Thus, an underlying

constitutional or statutory violation is a predicate to liability under § 1983." *Id.* (citation

omitted).

Moreover, in order to plead a § 1983 cause of action against persons acting in their

individual capacity, a plaintiff "must establish that the defendant was either personally involved

in the deprivation or that his wrongful actions were causally connected to the deprivation." *James*

*v. Tex. Collin County*, 535 F.3d 365, 373 (5th Cir. 2008). Additionally, officials may not be held

liable for the unconstitutional conduct of their subordinates under a theory of *respondeat*

*superior* or vicarious liability. *Iqbal*, 556 U.S. at 676. "A supervisory official may be held liable .

. . only if (1) he affirmatively participates in the acts that cause the constitutional deprivation, or

(2) he implements unconstitutional policies that causally result in the constitutional injury."

*Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). "To establish supervisor liability for

constitutional violations committed by subordinate employees, the plaintiff must show that the

supervisor acted or failed to act with deliberate indifference to the violation of others'

constitutional rights committed by their subordinates." *Id.* Deliberate indifference requires "proof

that a municipal actor disregarded a known or obvious consequence of his action." *Id.* at 447.

c)      Plaintiff's Claims Against Michael Wilson and James Adcock

Although named as Defendants, the body of Plaintiff's complaint does not mention

Michael Wilson or James Adcock, and makes no factual allegations against either of them.

Defendants are both employees of Guaranty Bank. Naylor mentions Guaranty Bank in her

complaint as follows:

As a result of the investigators Allen, Parrish, Walker, and La. State Police Officer

> Grisson's inept investigation and unlawful seizure and search of plaintiff's cell phone, as well as the unlawful seizure and search of plaintiff's 2012 chevrolet camaro a new vehicle for which James Berry had made the down payment and signed the note at Guarantee Bank, plaintiff's constitutional rights against unlawful search and seizure were violated and, plaintiff was locked away in jail and detained from June 13, 2013 until June 10, 2015.

[doc. #1, ¶ E]. In her opposition to the motions to dismiss, Naylor also states that Berry had a great deal of influence in the town of Rayville. Specifically, she states that "all [James Berry] had to do was pick up the phone and call Mr. James Adcock at Guaranty Bank and tell him that the plaintiff . . . needed a car or cars and was done. [sic] No paper work, no credit check, just Judge Berry's word . . . ." [doc. #23, p. 2].

Naylor contends that her car was illegally searched in violation of her Fourth Amendment rights. However, the fact that Guaranty Bank may be a note holder for a loan on Naylor's car is immaterial to her Fourth Amendment claims. Naylor's complaint makes no allegations that Wilson or Adcock violated her constitutional or statutory rights in any way, as is required to state a claim under § 1983. *See Harrington*, 118 F.3d at 365 (finding that "an underlying constitutional or statutory violation is a predicate to liability under § 1983.").

Accordingly, it is recommended that Plaintiff's claims against Michael Wilson and James Adcock be DISMISSED WITH PREJUDICE.

        d)        <u>Plaintiff's Claims Against Trooper Daniel Grisson and Lieutenant Terry Parrish</u>

Naylor asserts that on October 9, 2012, she gave her cell phone to Defendants Trooper Grisson, Lieutenant Parrish, Captain Lucille Walker, and Investigator Dewey Allen for the "sole purpose" of downloading a video recording of alleged police brutality against her daughter. Naylor contends that Defendants illegally searched her vehicle and cell phone, including her text

messages, in violation of the Fourth Amendment. As a result of those illegal searches, Naylor

asserts that she was falsely arrested and charged with extortion, public intimidation against an

officer, and prostitution.

### 1. Plaintiff's False Arrest Claim Is Barred by Heck v. Humphrey

In *Heck v. Humphrey*, the United States Supreme Court held, generally, that a plaintiff

who has been convicted of a crime cannot bring a § 1983 claim challenging the constitutionality

of his or her conviction, unless that conviction has been reversed, expunged, declared invalid, or

called into question by a federal court's issuance of a writ of *habeas corpus*. *Heck v. Humphrey*,

512 U.S. 477, 486–87 (1994). Specifically, the Court held:

> `     [I]n order to recover damages for allegedly unconstitutional conviction or
> imprisonment, or for other harm caused by actions whose unlawfulness
> would render a conviction or sentence invalid, a § 1983 plaintiff must prove
> that the conviction or sentence has been reversed on direct appeal, expunged
> by executive order, declared invalid by a state tribunal authorized to make
> such determination, or called into question by a federal court's issuance of a
> writ of *habeas corpus*, 28 U.S.C. § 2254. A claim for damages bearing that
> relationship to a conviction or sentence that has not been so invalidated is not
> cognizable under § 1983. Thus, when a state prisoner seeks damages in a §
> 1983 suit, the district court must consider whether a judgment in favor of the
> plaintiff would necessarily imply the invalidity of his conviction or sentence;
> if it would, the complaint must be dismissed unless the plaintiff can
> demonstrate that the conviction or sentence has already been invalidated. But
> if the district court determines that the plaintiff's action, even if successful,
> will not demonstrate the invalidity of any outstanding criminal judgment
> against the plaintiff, the action should be allowed to proceed, in the absence
> of some other bar to the suit.

*Id.* "At the core of *Heck* is a proscription against allowing a civil suit to cast doubt on a criminal

conviction." *Crowe v. Hoffman*, No. 12-687, 2013 WL 357006, at *2 (E.D. La. Jan. 29, 2013)

(citing *Heck*, 512 U.S. at 487)).

In *Walter v. Horseshoe Entertainment*, the Fifth Circuit held that:

> In order to support a claim for unlawful [or false] arrest, a plaintiff must show that he was arrested without probable cause. *Burge v. Parish of St. Tammany*, 187 F.3d 452, 481 (5th Cir. 1999). Here, the plaintiffs were arrested for crimes of which they were ultimately convicted. *Heck* therefore bars recovery for the false arrest claim, because the conviction necessarily implies that there was probable cause for the arrest. *Sappington v. Bartee*, 195 F.3d 234, 237 (5th Cir. 1999).

*Walter v. Horseshoe Entm't*, 483 Fed. App'x. 884, 887–88 (5th Cir. 2012).

Likewise, where the plaintiff's conviction on a charge for which she was arrested is by way of an *Alford* plea to that charge, the plea necessarily implies that there was probable cause for the arrest and, thus, that the arrest was not unlawful or false. *See Ballard v. Burton*, 444 F.3d 391, 396-97 (5th Cir. 2006) (finding that an "*Alford* plea [is] the procedural equivalent of a non-*Alford* guilty plea," and that "an *Alford* plea can be used to impose *Heck'*s favorable termination rule.").

Here, Naylor entered an *Alford* plea to the charge of Public Intimidation. Naylor's argument that she did not commit the crimes charged implies the invalidity of her conviction. Allowing Naylor to proceed with her false-arrest claim would necessarily attack one of the grounds for her arrest. *See Daigre v. City of Waveland, Miss.*, 549 Fed. App'x 283, 287 (5th Cir. 2013). Therefore, her § 1983 false arrest claim is barred by *Heck*.

Accordingly, it is recommended that Plaintiff's false arrest claim against Defendants Grisson and Parrish be DISMISSED WITH PREJUDICE.

### 2. Plaintiff's Fourth Amendment Claims Are Prescribed

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S.

CONST. amend. IV.  The protections of the Fourth Amendment extend to the states

pursuant to the Fourteenth Amendment.  *Dunaway v. New York*,  442 U.S. 200, 207

(1979) (citation omitted).  Moreover, claims of unlawful arrest, illegal search and seizure,

and pretrial deprivation of liberty interests are properly analyzed under the cases

interpreting the Fourth Amendment.  *See Gray v. Horton*, No. 06-1070, 2008 WL

170664, *4 (W. D. La. Jan. 18, 2008) (and cases cited therein); *Buchanek v. City of

Victoria*, No. V-08-08, 2008 WL 4093623, *5 (S. D. Tex., Aug. 28, 2008) (and cases

cited therein).

　　　Naylor's Fourth Amendment § 1983 claim is subject to Louisiana's one-year

prescription period. *See* LA. C.C. art. 3492; *Burge*, 996 F.2d at 787. While state law

determines the prescription period, federal law determines when the cause of action

accrues. *Cauley v. FNU Dawson, Warden*, 645 Fed. App'x 303, 303 (5th Cir. 2016).

Ordinarily, a cause of action under section 1983 accrues "when the plaintiff knows or has

reason to know of the injury which is the basis of the action." *Id.* (citing *Pete v. Metcalfe*,

8 F.3d 214, 217 (5th Cir. 2003) (internal citations omitted). But "the statute of limitations

upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth

Amendment, where the arrest is followed by criminal proceedings, begins to run at the

time the claimant becomes detained pursuant to legal process." *Wallace v. Kato*, 549 U.S.

384, 397 (2007).

　　　In her complaint, Plaintiff asserts that she was arrested, detained, and charged

with extortion, public intimidation, and prostitution on June 13, 2013, as a result of the

unlawful search of her cell phone and car. [doc. #1, ¶ B]. At the latest, under Louisiana's

prescriptive period, Naylor must have filed her suit for the alleged Fourth Amendment violations by June 13, 2014. However, Plaintiff commenced this suit on June 10, 2016—nearly two years after the expiration of the prescription period.

Accordingly, it is recommended that Naylor's Fourth Amendment claims against Defendants Grisson and Parrish be DISMISSED WITH PREJUDICE as time-barred.

e)      Plaintiff's Claims Against Captain Lucille Walker, Investigator Dewey Allen, Officer William Scott Hunt, and Sheriff Lee Harrell

Defendants Captain Lucille Walker, Investigator Dewey Allen, Officer William Scott Hunt, and Sheriff Lee Harrell did not join in the present motions to dismiss – no doubt, at minimum, because they were never personally served. Nonetheless, they are entitled to dismissal on the same basis as Lieutenant Parrish and Trooper Grisson. The court possesses the inherent authority to *sua sponte* dismiss a party or expand upon the grounds for dismissal urged by movants as long as the adverse parties receive notice and a chance to respond.  *McCullough v. Lynaugh*, 835 F.2d 1126, 1127 (5th Cir. 1988) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)); *see also Spann v. Woods*, 66 F.3d 322 (5th Cir. 1995) (unpubl.) (district court *sua sponte* dismissed claims under 12(b)(6) although the defendants never filed a motion to dismiss, nor did they plead failure to state a claim in their answer); *McCoy v. Wade*, No. 06-2292, 2007 WL 1098738, *1 (W.D. La. Mar. 12, 2007) (the report and recommendation itself provides adequate notice to the parties). Also, where a defending party establishes that a plaintiff has no cause of action, this defense should inure to similarly situated defendants. *See Lewis v. Lynn*, 236 F.3d 766, 768 (5th Cir. 2001) (citations omitted).

Having determined that Plaintiff's claims against Lieutenant Parrish and Trooper Grisson are Heck-*barred* and time-barred, it is recommended that Plaintiff's claims against Captain Walker, Investigator Allen, Officer Hunt, and Sheriff Harrell be DISMISSED WITH PREJUDICE.

f)    Plaintiff's Claims Against Attorney General Landry

Plaintiff's complaint is devoid of any allegations against Louisiana Attorney General Jeff Landry. The only mention of the Attorney General's office in Naylor's complaint is as follows:

> The District Attorney for the 5th Judicial District Court recused itself and the case was prosecuted by Mike Ruddick, Assistant Attorney General, which was a malicious prosecution in that they should have screened this case and had they done so, they would have known that your plaintiff had not committed a crime.

[doc. #1, ¶ C].

In a § 1983 suit, government officials such as Attorney General Landry may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior* or vicarious liability. *Iqbal*, 556 U.S. at 676. A plaintiff must plead that "each Government-official, through the official's own individual actions, has violated the Constitution." *Id.* Naylor's complaint does not mention any actions taken by Attorney General Landry individually that violated her constitutional rights. Moreover, Naylor has not pleaded that Attorney General Landry implemented unconstitutional policies that resulted in a constitutional injury or alleged that he acted with deliberate indifference to the violation of others' constitutional rights committed by his subordinates. As such, Attorney General Landry is not vicariously liable for any alleged

12

acts committed by Assistant Attorney General Ruddick.

Additionally, to the extent Naylor attempts to assert a claim for malicious prosecution in this litigation, that claim fails as a matter of law. Under Louisiana law, the six elements of a malicious prosecution action are:

> (1) the commencement or continuance of an original criminal or civil judicial proceedings; (2) legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceed; (5) the presence of malice therein; and (6) damages conforming to the legal standards resulting to plaintiff.

*Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984). In a false arrest action, Louisiana law invokes an objective finding of probable cause, while in a malicious prosecution action, Louisiana law invokes a fact inquiry into the defendant's subjective beliefs, *i.e.*, "whether the defendant had an honest and reasonable subjective belief about the guilt of the accused at the time he pressed charges." *Williams v. DiVittoria*, 777 F.Supp. 1332, 1338 (E.D. La. 1991) (citing *Jones*, 448 So.2d at 1272)). Thus, the Louisiana Supreme Court has held that a conviction on the criminal charges does not conclusively establish that the defendant in a malicious prosecution action had probable cause at the time he pressed charges. *Jones*, 448 So.2d at 1271. Furthermore, malice amounts to any "feeling of hatred, animosity, or ill will toward the plaintiff," or malice "may be inferred from lack of probable cause or a finding of reckless disregard for the other person's rights." *Miller v. East Baton Rouge Parish Sheriff's Dep't*, 511 So.2d 446, 453 (La. 1987).

Assistant Attorney General Ruddick is not a named defendant in this case. But in any event, Naylor's pleadings do not establish a claim for malicious prosecution against any of the named defendants. "Because Louisiana public policy guarantees that people

13

acting in good faith shall have access to courts to redress wrongs, malicious prosecution

lawsuits are disfavored[.]" *Waste Mgmt. of La., L.L.C.*, *v. Parish of Jefferson* ex rel.

*Jefferson Parish Council*, 947 F.Supp.2d 648, 656 (E.D. La. 2013). In order to sustain a

malicious prosecution lawsuit, "a clear case must be established, where the forms of

justice have been perverted to the gratification of private malice and the willful

oppression of the innocent." *Id.* (citing *Johnson v. Pearce*, 313 So.2d 812, 816 (La.

1975). Plaintiff has not shown that the charges brought against her were terminated in her

favor. Plaintiff entered an *Alford* plea to the charge of Public Intimidation, and she fails to

state what came of the extortion and prostitution charges. Moreover, while Naylor's

*Alford* plea does not conclusively establish probable cause, Naylor has failed to show that

her charges were brought without probable cause or that the Attorney General's office

acted with malice in any way. Thus, Plaintiff has failed to plausibly plead a claim for

malicious prosecution.

   Accordingly, it is recommended that Plaintiff's claims against Louisiana Attorney

General Jeff Landry be DISMISSED WITH PREJUDICE. Furthermore, to the extent

Plaintiff asserts a claim of malicious prosecution against any of the named defendants, it

is recommended that claim be DISMISSED WITH PREJUDICE for failure to state a

claim for which relief can be granted.

   g)  Plaintiff's Claims Against James Berry

   Naylor asserts that when officers illegally searched her phone, they discovered

text messages between her and James Berry. [doc. #1, ¶ D]. She alleges that her and Berry

had a sexual relationship for thirteen years and that he provided her financial support. *Id.*

However, when interviewed on June 13, 2013, Berry lied and said there was no relationship, resulting in Plaintiff being falsely charged with public intimidation, extortion, and prostitution. *Id.* ¶ F. In her opposition, she asserts that Berry conspired with police officers to hide their relationship. [doc. #23, p. 2].  Naylor contends that "[o]nly when the text messages became knowledgeable to Rayville police department" did Berry begin to conspire and undermine their relationship. *Id.*

Naylor further asserts that she was denied equal protection under the Fourteenth Amendment because "she was treated differently than James Berry, a Caucasian male, with whom plaintiff, an African American female, was engaged in a consensual sexual relation for over 13 years." [doc. #1, ¶ G].

### 1. Equal Protection Claims

The Equal Protection Clause of the Fourteenth Amendment protects individuals from state governmental action that works to treat similarly situated individuals differently. *John Corp. v. City of Houston*, 214 F.3d 573, 586 (5th Cir. 2000). To state a claim under the Equal Protection Clause, a plaintiff must demonstrate that she has been treated differently due to her membership in a protected class and that the unequal treatment stemmed from discriminatory intent. *Hampton Co. Nat. Sur., LLC v. Tunica County, Miss.*, 543 F.3d 221, 228 (5th Cir. 2008). However, the Supreme Court has "recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 120 S.Ct. 1073, 1074 (2000). As a Magistrate for a local city

15

court, Berry would be liable under § 1983 for non-judicial, unconstitutional actions made under color of state law. *See Donley v. Hudsons Salvage, L.L.C.*, 517 Fed. App'x 216, 219 (5th Cir. 2013); *Thomas v. Sams*, 741 F.2d 783 (5th Cir. 1984).

Here, Naylor has made only a conclusory allegation that Berry, who is white, was treated differently from her because she is African-American. Naylor does not allege who treated her differently or that any of the named defendants acted with discriminatory intent or purpose. She has failed to allege that there have been similarly-situated individuals of her race who have been treated differently under her circumstances. She has therefore failed to assert a cognizable equal protection claim.

In any event, Naylor's equal protection claim is time-barred. As discussed above, a cause of action under section 1983 accrues "when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Cauley*, 645 Fed. App'x at 303 (citing *Pete*, 8 F.3d at 217) (internal citations omitted). "A plaintiff need not know that she has a legal cause of action; she need know only the facts that would ultimately support a claim." *Piotrowski v. City of Houston*, 237 F.3d 567, 576 (5th Cir. 2001). At the latest, Naylor knew the facts supporting her equal protection claim on June 13, 2013, when Berry allegedly lied and she was charged with extortion, prostitution, and public intimidation. As such, her equal protection claim is also barred by Louisiana's one-year prescription period.

Accordingly, it is recommended that Naylor's equal protection claim be DISMISSED WITH PREJUDICE.

### 2. Conspiracy Allegations

16

Plaintiff raised a new claim of conspiracy against Berry in her opposition. When a

*pro se* plaintiff raises a new claim for the first time in response to a motion to dismiss, the

district court should construe the new claim as a motion to amend the complaint under

Federal Rule of Civil Procedure 15(a). *See Cash v. Jefferson Assocs., Inc.*, 978 F.2d 217,

218 (5th Cir. 1992). Thus, the Court will consider Plaintiff's conspiracy claims.

A plaintiff may maintain a claim under § 1983 of conspiracy to deprive her of

constitutional rights. *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1996). In

order to prevail on a § 1983 conspiracy claim, a plaintiff must establish "(1) the existence

of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance

of the conspiracy by a party to the conspiracy." *Id.* "To show the existence of a

conspiracy, a plaintiff must demonstrate that the defendants entered into an agreement to

deprive him of civil rights." *Dorward v. Ramirez*, No. 3:09-CV-0018-D, 2009 WL

2777880, *15 (N.D. Tex. Aug. 28, 2009). Mere conclusory allegations of conspiracy

cannot, absent reference to material facts, state a viable claim of conspiracy under § 1983.

*Id.*

Naylor's conspiracy allegations are entirely conclusory. She merely states that

Berry "obstructed justice when he hid their relationship and begin to lied [sic] and

conspire with police officers." [doc. #23, p. 2]. More than a "blanket of accusation" is

necessary to support a conspiracy claim under § 1983. *Arsenaux v. Roberts*, 726 F.2d

1022, 1024 (1982); *Hale v. Harney*, 786 F.2d 688, 690 (dismissing conspiracy claim

under § 1983 for failure to "state any factual basis to support the conspiracy charge.").

Regardless of any relationship that did or did not exist between Berry and Naylor, there is

simply no factual support in Naylor's pleadings to show that police officers and Berry

agreed to deprive Naylor of her constitutional rights.

Accordingly, it is recommended that Plaintiff's conspiracy claims be DISMISSED

WITH PREJUDICE.

### III. Insofar as Plaintiff Asserts an Ineffective Assistance of Counsel Claim in This Litigation, That Claim Fails As a Matter of Law

In her opposition, Naylor asserts that she received ineffective assistance of

counsel from the "State attorney" who represented her when she entered an *Alford* plea to

the Public Intimidation charge. [doc. #23, p. 3]. Because this issue is not raised in her

complaint, the Court will again construe it as a motion to amend under Rule 15(a). *See*

*Cash*, supra.

Presumably when Naylor refers to a "State attorney," she is referring to a public

defender who represented her. Naylor's public defender is not a defendant in this matter.

Nonetheless, even if Naylor's attorney were a named defendant, her claim fails as a

matter of law. The Supreme Court has held that "a public defender does not act under

color of state law when performing a lawyer's traditional functions as counsel to a

defendant in a criminal proceeding." *Polk County v. Dodson*, 454 U.S. 213, 325 (1981);

*Ellison v. De La Rosa*, 685 F.2d 959, 960 (5th Cir. 1982) (ineffective assistance of

counsel claims brought against appointed counsel in § 1983 suit must fail for want of any

action under color of state law); *Victor v. Louisiana*, No. 12-2745, 2012 WL 6757038,

*10 (E.D. La. Nov. 26, 2012) ("[A]ny claims plaintiffs may wish to assert against their

criminal defense counsel plainly fail, because it is clear that neither public defenders nor

private attorneys are state actors liable under § 1983.").

Accordingly, it is recommended that Plaintiff's Ineffective Assistance of Counsel claim be DISMISSED WITH PREJUDICE.

### Conclusion

For the above-assigned reasons,

IT IS RECOMMENDED that the motions to dismiss for failure to state a claim for which relief can be granted, FED. R.CIV.P. 12(b)(6) [docs. #12, #15, #17, #19], filed by Defendants Attorney General Jeff Landry, Judge Terry Doughty, State Trooper Daniel Grisson, James Berry, Michael Wilson, James Adcock and Lt. Terry Parrish be GRANTED, and that plaintiff's claims be DISMISSED WITH PREJUDICE.

IT IS FURTHER RECOMMENDED that plaintiff's claims against defendants, Lucille Walker, Dewey Allen, William Scott Hunt, and Lee Harrell, be DISMISSED WITH PREJUDICE for failure to state a claim upon which relief can be granted. FED.R.CIV.P. 12(b)(6).

IT IS FURTHER RECOMMENDED that to the extent plaintiff asserts a claim for Ineffective Assistance of Counsel in this litigation, that claim be DISMISSED WITH PREJUDICE.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof.  A courtesy copy of any objection or response or request for extension of time shall be

furnished to the District Judge at the time of filing.  Timely objections will be considered

by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE**

**PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS**

**CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE**

**DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON**

**GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE**

**UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL**

**CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

In Chambers, at Monroe, Louisiana, this 21st day of December 2016.

KAREN L. HAYES
UNITED STATES MAGISTRATE JUDGE

20